IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

v.                                                            24-CR-97

GINO SALTER,

                 Defendant.

_____

### PLEA AGREEMENT

The defendant, GINO SALTER, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.    THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to plead guilty to Count 3 and Count 4 of the Indictment which charges as follows:

    a.  In Count 3, a violation of Title 18, United States Code, Sections 933(a)(1) and (a)(3) (Conspiracy to Traffic in Firearms), for which the maximum possible sentence is a term of imprisonment of 15 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of not more than 3 years;

    b.  In Count 4, a violation of Title 18, United States Code, Sections 922(o) and 924(a)(2) (Transfer of a Machinegun), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of not more than 3 years.

    c.  The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, if it is determined that the defendant has

violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for

time previously served on supervised release. As a consequence, a prison term imposed for a

violation of supervised release may result in the defendant serving a sentence of imprisonment

longer than the statutory maximum set forth in ¶ 1 of this agreement.


## II.     ELEMENTS AND FACTUAL BASIS

3.     The defendant understands the nature of the offenses set forth in ¶ 1 of this

agreement and understands that if this case proceeded to trial, the government would be

required to prove beyond a reasonable doubt the following elements of the crimes:

### Count 3 – 18 U.S.C. § 933(a)(1) and (a)(3)

a.     that the defendant did knowingly conspire and agree;

b.     to ship, transport, transfer, cause to be transported or otherwise dispose
of one or more firearms to another person;

c.     in or otherwise affecting interstate commerce; and

d.     that the defendant knew or had reasonable cause to believe that the use,
carrying, or possession of the firearm by the recipient would constitute
a felony.

### Count 4 – 18 U.S.C. § 922(o) and 924(a)(2)

a.     that the defendant knowingly transferred a machine gun; and

b.     that the defendant knew, or was aware of, the essential characteristics
of the firearm which made it a machine gun as defined by Section
921(a).

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the

basis for the entry of the pleas of guilty including relevant conduct:

a.      In early July 2023, the defendant and co-defendant, Jordan Lippert, entered into an agreement whereby Lippert, a Pennsylvania State resident, agreed to purchase firearms and provide them to the defendant (a New York State resident).

b.      On or about July 18, 2023, Lippert purchased one firearm, namely, a Glock 19, 9 mm handgun, bearing serial number BSCG572, for the defendant from McKean County E-Sales, located in Smethport, Pennsylvania. In connection with the acquisition of this firearm, Lippert falsely represented on an ATF Form 4473 that she was to be the actual purchaser of the firearm, when in truth and in fact, she purchased the firearm to give to the defendant. Following the acquisition of the firearm, the defendant and Lippert caused the firearm to be transported into the Western District of New York.

c.      On or about July 19, 2023, Lippert purchased two firearms, namely, a Stoeger, 9 mm, STR-9C pistol, bearing serial number T6429-21S18757, and a Smith and Wesson, SDVE, 9 mm handgun, bearing serial number FEH2046, for the defendant from Dunham's Sports, located in Bradford, Pennsylvania. In connection with the acquisition of these firearms, Lippert falsely represented on an ATF Form 4473 that she was to be the actual purchaser of the firearms, when in truth and in fact, she purchased the firearms to give to the defendant. Following the acquisition of the firearms, the defendant and Lippert caused the firearms to be transported into the Western District of New York.

d.      On or about July 21, 2023, Lippert purchased two firearms, namely, a Ruger SR9, 9 mm, handgun, bearing serial number 335-91567, and a Ruger SR9, 9 mm, handgun, bearing serial number 337-96483, for the defendant from McKean County E-Sales, located in Smethport, Pennsylvania. In connection with the acquisition of these firearms, Lippert falsely represented on an ATF Form 4473 that she was to be the actual purchaser of the firearms, when in truth and in fact, she purchased the firearms to give to the defendant. Following the acquisition of the firearms, the defendant and Lippert caused the firearms to be transported into the Western District of New York.

e.      On July 21, 2023, the defendant sold the Stoeger, 9 mm, STR-9C pistol outlined in paragraph (c), above, to another individual in Buffalo, New York.

f.    On or about July 23, 2023, Lippert attempted to purchase two firearms, namely, a Canik, 9 mm, pistol, model PT9, bearing serial number T6472-22CB40051, and a Glock, 9 mm, pistol, model 43, bearing serial number BHYN178 for the defendant. In connection with the acquisition of these firearms, she falsely represented on an ATF Form 4473 that she was to be the actual purchaser of the firearms, when in truth and in fact, she purchased the firearms to give to the defendant. Lippert was unable to secure these firearms until August 9, 2023, due to a fifteen-day hold. On August 9, 2023, following the acquisition of the firearms, the defendant and Lippert caused the firearms to be transported into the Western District of New York.

g.    After purchasing each of the firearms outlined in the above paragraphs (b)-(f), Lippert physically transferred the firearms to the defendant while located in Bradford, Pennsylvania. The defendant provided Lippert with some form of payment, usually a few hundred dollars, as kickback for agreeing to purchase the firearms for him. The defendant intended to further sell the firearms purchased by Lippert to other individuals in the Buffalo, New York area. The defendant admits that he was a New York State resident and familiar with requirements to purchase and/or own a firearm in New York state. The defendant admits that he knew or had reasonable cause to believe that his use, carrying, or possession of the firearm would constitute a felony offense in the State of New York.

h.    On or about July 13th and July 21, 2023, ATF, in conjunction with the Buffalo Police Department, utilized a confidential source to conduct controlled purchases of a total of three "switches,"[1] or machinegun conversion devices, from the defendant. On or about July 13, 2023, the defendant sold one Glock "switch" in exchange for $550 in U.S. Currency. On July 21, 2023, the defendant sold two Glock "switches," and the firearm noted in the above paragraph (e) for approximately $2,000 in U.S. Currency. The defendant had knowledge that the "switches" were made using a 3D printer and admits that he was aware that the switches could be utilized to convert a semi-automatic weapon into an automatic weapon that would fire more than one round by the single pull of a trigger.

---

[1] "Switch" is a street term for a machine gun conversion device which is a device that has been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machine guns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with the conversion device. ATF considers Glock conversion devices as a post-May 1986, machine gun. Therefore, apart from official military and law enforcement use, Glock conversion devices may only be lawfully possessed by properly licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required.

### III.    SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.    The government and the defendant agree that Guidelines §§ 2K2.1(a)(5) applies to the offense of conviction and provides for a base offense level of **18**.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.    The government and the defendant agree that the following specific offense characteristics apply:

    a.  The **four-level** increase pursuant to Guidelines § 2K2.1(b)(1) (Between 8-24 firearms involved in the offense conduct).

    b.  The **five-level** increase pursuant to Guidelines § 2K2.1(b)(5)(C) (Convicted under 18 U.S.C. § 933(a)(3) and the offense involved conspiracy to transport, transfer, sell, or otherwise dispose of two or more firearms, knowing or having reason to believe that such conduct would result in the receipt of the firearms to an individual who intended to use or dispose of the firearms unlawfully).

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 3 ADJUSTMENTS

8.    The government and the defendant agree that the following adjustment to the base offense level does apply:

    a.  The 2-level increase of Guidelines § 3C1.1 (obstruction of justice).

## ADJUSTED OFFENSE LEVEL

9.     Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **29**.

## ACCEPTANCE OF RESPONSIBILITY

10.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of **26**.

## CRIMINAL HISTORY CATEGORY

11.     It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

12.     It is the understanding of the government and the defendant that, with a total offense level of **26** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **63 to 78 months, a fine of $25,000 to $250,000, and a period**

**of supervised release of 3 years**.  Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13.    The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above.  The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range.  This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14.    The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

15.    In the event that the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.    STATUTE OF LIMITATIONS

16.    In the event the defendant's pleas of guilty are withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further

agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the conviction becomes final.

## V.    IMMIGRATION CONSEQUENCES

17.    The defendant represents that the defendant is a citizen of the United States. However, if the defendant is a naturalized citizen of the United States, the defendant understands that pleading guilty may result in denaturalization and removal. If the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty pleas may entail.

18.    The defendant understands that the defendant is bound by the guilty pleas regardless of the immigration consequences of the pleas. Accordingly, the defendant waives

any and all challenges to the guilty pleas and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty pleas or to file a direct appeal or any kind of collateral attack challenging the guilty pleas, conviction, or sentence based on the immigration consequences of the guilty pleas, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum

## VI.    GOVERNMENT RIGHTS AND RESERVATIONS

19.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement; and

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.    oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

20.    At sentencing, the government will move to dismiss the remaining counts of the Indictment pending against the defendant under 24-CR-97.

9

21.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.    APPEAL RIGHTS

22.     The defendant knowingly waives the right to appeal and collaterally attack the defendant's convictions in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the convictions based on: (1) any non-jurisdictional defects in the proceedings prior to entry of these pleas; (2) a claim that the statutes to which the defendant is pleading guilty is unconstitutional, (except in the event that, in the future, the Supreme Court finds the statute in question unconstitutional); and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statutes to which the defendant is pleading guilty.

23.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack, in any proceeding, including but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment of **63 to 78 months, a fine of $25,000 to $250,000,**

**and a period of supervised release of 3 years**, notwithstanding the manner in which the Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and did not object. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

24.     The defendant understands that by agreeing not to collaterally attack the convictions or sentence in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the convictions or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

25.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment of **63 to 78 months, a fine of $25,000 to $250,000, and a period of supervised release of 3 years**, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

26.     By entering these pleas of guilty, the defendant waives any and all right to withdraw the defendant's pleas or to attack the defendant's conviction or sentence, either on

direct appeal or collaterally, on the ground that the government has failed to produce any discovery material, (other than material the government was required to produce under *Brady v. Maryland* and its progeny), that has not already been produced as of the date of the signing of this Agreement.

27.     Notwithstanding the foregoing, nothing in the Appeal Rights section of this plea agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

## VIII. FORFEITURE PROVISIONS

28.     As a condition of the plea, the defendant agrees to forfeit all of the defendant's right, title, and interest to any and all property which is subject to forfeiture pursuant to Title 18, United States Code, Section 934(a)(1)(A) and/or Title 21, United States Code, Section 853(p), which is in the possession and control of the defendant or the defendant's nominees. That property includes:

### FORFEITURE MONEY JUDGMENT:

> The sum of approximately two thousand five hundred fifty dollars ($2,550.00) in United States currency that represents proceeds that the defendant obtained from the criminal conduct, which if not readily available will become a forfeiture money judgment and will serve as a lien against the defendant's property, wherever situated, with interest to accrue at the prevailing rate per annum until fully satisfied in the event this amount is not located

29.     The defendant also agrees that the Forfeiture Money Judgement is properly forfeitable to the government pursuant to Title 21, United States Code, Section 934(a)(1)(A)

and/or Title 21, United States Code, Section 853(p). The defendant agrees that the conditions of Title 21, United States Code, Section 853(p) have been satisfied, and thus the government has the right to seek forfeiture of substitute assets of the defendant pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e)(1)(B).

30.     The defendant understands and agrees that the Court, at the time of sentencing, will order a Forfeiture Money Judgment which is due and payable in full immediately and subject to immediate enforcement by the government. All payments made by the defendant toward the Forfeiture Money Judgment shall be made by money order, certified check and/or official bank check, payable to the "U.S. Marshals Service." The defendant shall cause said payment(s) to be hand delivered or sent by overnight mail delivery to the United States Attorney's Office, Western District of New York, Asset Recovery Division, with the criminal docket number noted on the face of the instrument. The defendant consents to the restraint of all payments made toward the Forfeiture Money Judgment.

31.     The defendant agrees that any assets in which the defendant has an interest, and which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, will be used to offset any Forfeiture Money Judgment imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.

32.     The defendant agrees to forfeit his interest in any other property of his to satisfy the Forfeiture Money Judgement. The defendant further agrees to take whatever steps are necessary to fully assist the government in its efforts to identity, recover, and forfeit such

property, including but not limited to, execution of any documents that the government deems necessary to transfer the defendant's interest and title. The defendant agrees to waive notice and not to object to any motions made by the government for substitute assets. Further, the defendant consents to the entry of any such order of forfeiture for substitute assets.

33.    The defendant understands and agrees that unless the Forfeiture Money Judgment is immediately paid in full, federal law allows agencies to refer debts to the United States Department of the Treasury for the purpose of collecting debts through the Treasury Offset Program ("TOP"). Under this program, the Department of the Treasury will reduce or withhold any of the defendant's eligible federal payments by the amount of the defendant's debt. This "offset" process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, and the Internal Revenue Code. The government hereby provides the defendant notice that 60 days after sentencing, the government will refer the outstanding Forfeiture Money Judgment to TOP for the offset of any pending federal payments and waives any further notice. The defendant agrees not to object or challenge any offset taken through TOP.

34.    The defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the Forfeiture Money Judgment. To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, when no restitution has been ordered, which funds shall be applied to satisfy the Forfeiture Money Judgment.

35.     After the entry of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the defendant agrees to the entry of a Preliminary Order of Forfeiture and a Final Order of Forfeiture forfeiting the property listed above. The defendant further agrees that the Preliminary Order of Forfeiture and a Final Order of Forfeiture shall: (a) issue and become final as to the defendant prior to sentencing; (b) be made part of the defendant's sentence; and (c) be included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.

36.     The defendant knowingly and voluntarily waives the defendant's right to any required notice in Rules 11(b)(1)(J), 32.2 and 43(a) and Title 18, United States Code, Section 983, including notice set forth in an indictment, information or administrative notice, the Court's advisement of any applicable forfeiture during the plea hearing, notice of the entry of the Preliminary Order of Forfeiture, the oral announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

37.     The defendant knowingly, intelligently, and voluntarily waives any right to a jury trial on the forfeiture of the property. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of the property in any proceeding, including any defenses based on a claim of double jeopardy, whether constitutional or statutory, as to this proceeding or any related civil or administrative proceeding, the Ex Post Facto clause of the United States Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

38.    The defendant acknowledges and understands that the forfeiture of property is (a) part of sentencing; (b) shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, any income taxes or any other penalty imposed by the Court; and (c) shall survive bankruptcy.

39.    The defendant agrees not to file a claim or petition seeking remission or contesting any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of such property in any administrative or judicial (civil or criminal) forfeiture proceeding. Further, if any third party files a claim to such property listed, the defendant will assist the government in defending such claim.

40.    The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment, and disposition of the Forfeiture Money Judgment survives and shall be given full force and effect. The failure of the defendant to forfeit any property as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement.

41.    The defendant agrees that if, for any reason, in any pleadings before the Court and orders issued by the Court, including but not limited to, the Preliminary and/or Final Order of Forfeiture and the Judgment and Commitment, the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable

forfeiture statute in this case, or includes a clerical error, the defendant will consent and not oppose any effort by the government to amend, correct, or add to the description/list of items subject to forfeiture in this case.  Additionally, to the extent necessary and at the discretion of the United States Attorney's Office, the defendant further agrees, in the alternative, to the abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited.  Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones seized by law enforcement in this case.

## IX.    TOTAL AGREEMENT AND AFFIRMATIONS

42.    This plea agreement represents the total agreement between the defendant, GINO PEACE SALTER, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY:    _____
STACEY N. JACOVETTI
Assistant United States Attorney

Dated: June 24, 2025

I have read this agreement, which consists of pages 1 through 18. I have had a full opportunity to discuss this agreement with my attorney, James Auricchio, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

GINO PEACE SALTER
Defendant

Dated: June  24, 2025

JAMES AURICCHIO, ESQ.
Attorney for the Defendant

Dated: June  24, 2025